UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROBERT EDGAR, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ANADARKO PETROLEUM CORPORATION, R. A. WALKER, and ROBERT G. GWIN, <br><br> Defendants. | Case No. 4:17-cv-1372 <br><br> **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Robert Edgar ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Anadarko Petroleum Corporation ("Anadarko" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Anadarko securities between February 17, 2016 and May 2, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Anadarko Petroleum Corporation engages in the exploration, development, production, and marketing of oil and gas properties. It operates through three segments: Oil and Gas Exploration and Production, Midstream, and Marketing.

3. Founded in 1959, the Company is headquartered in The Woodlands, Texas. Anadarko's stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "APC."

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (i) Anadarko's maintenance and safety protocols in respect to certain of its vertical wells were inadequate; (ii) due to the foregoing shortcomings, these wells were at an increased risk of explosion; and (iii) that as a result of the foregoing, Anadarko's public statements were materially false and misleading at all relevant times.

5. On April 17, 2017, a deadly explosion killed two individuals and critically injured another in a recently built home located within 170 feet of an Anadarko well.

6. On April 26, 2017, post-market, *The Denver Post* reported that Anadarko "plans to shut down 3,000 vertical wells in northeastern Colorado" following the April 17 explosion.

7. On this news, Anadarko's share price fell $2.84, or 4.73%, to close at $57.12 on April 27, 2017.

8. On May 2, 2017, the Frederick-Firestone Fire Protection District, through a joint effort with the Firestone Police Department and with the assistance of the Colorado Bureau of Investigation, concluded that the fatal home explosion on April 17 was linked to a faulty gas line connected to an old well owned by Anadarko. Officials stated that the gas line had been abandoned, but not disconnected from the wellhead and sealed at both ends. Consequently, the line only stopped leaking gas after Anadarko shut down 3,000 wells in the region following the explosion.

9. On this news, Anadarko's share price fell $4.54, or 8.07%, to close at $51.74 on May 3, 2017.

10. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

13.     Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as Defendant Anadarko is headquartered in this District and a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

14.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15.     Plaintiff, as set forth in the attached Certification, acquired Anadarko securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.     Defendant Anadarko is incorporated in Delaware, and the Company's principal executive offices are located at 1201 Lake Robbins Drive, The Woodlands, Texas, 77380. Anadarko's common stock trades on the NYSE under the ticker symbol "APC."

17.     Defendant R. A. Walker ("Walker") has served at all relevant times as the Company's Chief Executive Officer ("CEO"), President and Chairman.

18.     Defendant Robert G. Gwin ("Gwin") has served at all relevant times as the Company's Chief Financial Officer ("CFO") and Executive Vice President of Finance.

19.     The Defendants referenced above in ¶¶ 17-18 are sometimes referred to herein as the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background**

20. Anadarko Petroleum Corporation engages in the exploration, development, production, and marketing of oil and gas properties. It operates through three segments: Oil and Gas Exploration and Production, Midstream, and Marketing.

**Materially False and Misleading Statements Issued During the Class Period**

21. The Class Period begins on February 17, 2016, when Anadarko filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2015 (the "2015 10-K"). For the quarter, Anadarko reported a net loss of $1.25 billion, or $2.45 per diluted share, on revenue of $2.13 billion, compared to a net loss of $395 million, or $0.78 per diluted share, on revenue of $3.17 billion for the same period in the prior year. For fiscal year 2015, Anadarko reported a net loss of $6.69 billion, or $13.18 per diluted share, on revenue of $9.03 billion, compared to a net loss of $1.75 billion, or $3.47 per diluted share, on revenue of $18.47 billion for fiscal year 2014.

22. In the 2015 10-K, the Company stated, in relevant part:

**Environmental and Occupational Health and Safety Regulations**

> Anadarko's business operations are subject to numerous international, provincial, federal, regional, state, tribal, local, and foreign environmental and occupational health and safety laws and regulations.

> ***

> The Company has incurred and will continue to incur operating and capital expenditures, some of which may be material, to comply with environmental and occupational health and safety laws and regulations. Although the Company is not fully insured against all environmental and occupational health and safety risks, and the Company's insurance does not cover any penalties or fines that may be issued by a governmental authority, it maintains insurance coverage that it believes is sufficient based on the Company's assessment of insurable risks and consistent with insurance coverage held by other similarly

situated industry participants. Nevertheless, it is possible that other developments, such as stricter and more comprehensive environmental and occupational health and safety laws and regulations as well as claims for damages to property or persons resulting from the Company's operations, could result in substantial costs and liabilities, including administrative, civil, and criminal penalties, to Anadarko.

***The Company believes that it is in material compliance with existing environmental and occupational health and safety regulations***. Further, the Company believes that the cost of maintaining compliance with these existing laws and regulations will not have a material adverse effect on its business, financial condition, results of operations, or cash flows, but new or more stringently applied existing laws and regulations could increase the cost of doing business, and such increases could be material.

(Emphasis added.)

23. The 2015 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the 2015 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24. On May 2, 2016, Anadarko filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 10-Q"). For the quarter, Anadarko reported a net loss of $1.03 billion, or $2.03 per diluted share, on revenue of $1.77 billion, compared to a net loss of $3.26 billion, or $6.45 per diluted share, on revenue of $2.41 billion for the same period in the prior year.

25. The Q1 2016 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

26. On July 26, 2016, Anadarko filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q2 2016 10-Q"). For the quarter, Anadarko reported a net loss of $692 million, or $1.36

per diluted share, on revenue of $1.97 billion, compared to net income of $61 million, or $0.12 per diluted share, on revenue of $2.71 billion for the same period in the prior year.

27.     The Q2 2016 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q2 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

28.     On October 31, 2016, Anadarko filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2016 (the "Q3 2016 10-Q").  For the quarter, Anadarko reported a net loss of $830 million, or $1.61 per diluted share, on revenue of $1.95 billion, compared to a net loss of $2.23 billion, or $4.41 per diluted share, on revenue of $1.76 billion for the same period in the prior year.

29.     The Q3 2016 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q3 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30.     On February 17, 2017, Anadarko filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2016 (the "2016 10-K").  For the quarter, Anadarko reported a net loss of $515 million, or $0.94 per diluted share, on revenue of $2.42 billion, compared to a net loss of $1.25 billion, or $2.45 per diluted share, on revenue of $2.13 billion for the same period in the prior year.  For fiscal year 2016, Anadarko reported a net loss of $3.07 billion, or $5.90 per diluted share, on revenue of $8.13 billion, compared to a net loss of $6.69 billion, or $13.18 per diluted share, on revenue of $9.03 billion for fiscal year 2015.

31. The 2016 10-K contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the 2016 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

32. In addition to the foregoing, the Company's Health, Safety, Environment ("HSE") and Sustainability Overview, updated yearly and published at all relevant times on Anadarko's website and signed by Defendant Walker, addresses the Company's safety protocols in further detail, stating in relevant part:

> **Corporate HSE Policy**
>
> HSE compliance at Anadarko is a joint effort across the Company, with shared ownership and responsibility between all the operating groups, select staff departments and the HSE department. The HSE department provides broad HSE program development worldwide and supports Senior Management in its execution of the Anadarko HSE Policy statement below. The Company achieves sustainability by living our core values of integrity and trust, servant leadership, open communication, people and passion, and commercial focus, all of which guide its activities.
>
> **Purpose**
>
> ***To respect and protect the safety and health of the public, our employees, our contractors and the environment in all countries and communities in which we conduct our business.***
>
> **Policy**
>
> The policy of Anadarko with respect to the environment, health and safety is to:
>
> - Promote a culture that allows for employee involvement in maintaining a safe work environment while recognizing that safety, health and environmental incidents are preventable
> - Strive for zero injuries and incidents
> - Be a recognized leader in environmental stewardship
> - Promote continuous improvement in our processes, reducing risk to safety, health and the environment
> - Adhere to applicable laws, regulations, Anadarko policies and procedures, and recognized standards
>
> Additionally, everyone has the responsibility, and will be held accountable, to work safely and in an environmentally sound manner.

> - ***Our number one priority is the safety and well-being of the public, our employees, and contractors***
> - Our business activities will be conducted to minimize our environmental impact

(Emphasis added.)

33.     The statements referenced in ¶¶ 21-32 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Anadarko's maintenance and safety protocols in respect to certain of its vertical wells were inadequate; (ii) due to the foregoing shortcomings, these wells were at an increased risk of explosion; and (iii) that as a result of the foregoing, Anadarko's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

34.     On April 17, 2017, a deadly explosion killed two individuals and critically injured another in a recently built home located within 170 feet of an Anadarko well.

35.     On April 26, 2017, post-market, *The Denver Post* reported that Anadarko "plans to shut down 3,000 vertical wells in northeastern Colorado" following the April 17 explosion.

36.     On this news, Anadarko's share price fell $2.84, or 4.73%, to close at $57.12 on April 27, 2017.

37.     On May 2, 2017, the Frederick-Firestone Fire Protection District, through a joint effort with the Firestone Police Department and with the assistance of the Colorado Bureau of Investigation, concluded that the fatal home explosion on April 17 was linked to a faulty gas line connected to an old well owned by Anadarko. Officials stated that the gas line had been abandoned, but not disconnected from the wellhead and sealed at both ends. Consequently, the

line only stopped leaking gas after Anadarko shut down 3,000 wells in the region following the explosion.

38.     On this news, Anadarko's share price fell $4.54, or 8.07%, to close at $51.74 on May 3, 2017.

39.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

40.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Anadarko securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Anadarko securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Anadarko or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Anadarko ;

- whether the Individual Defendants caused Anadarko to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Anadarko securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

46.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Anadarko securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Anadarko securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

47.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

48.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Against All Defendants For Violations Of Section 10(B) And Rule 10b-5 Promulgated Thereunder)**

49. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

51. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Anadarko securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Anadarko securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

52. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Anadarko securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Anadarko's finances and business prospects.

53. By virtue of their positions at Anadarko, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

54. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Anadarko securities from their personal portfolios.

55. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Anadarko, the Individual Defendants had knowledge of the details of Anadarko's internal affairs.

56. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Anadarko. As officers and/or directors of a publicly-held company, the Individual Defendants

had a duty to disseminate timely, accurate, and truthful information with respect to Anadarko's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Anadarko securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Anadarko's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Anadarko securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

57. During the Class Period, Anadarko securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Anadarko securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Anadarko securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Anadarko securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

58. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations Of Section 20(A) Of The Exchange Act Against The Individual Defendants)**

60. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61. During the Class Period, the Individual Defendants participated in the operation and management of Anadarko, and conducted and participated, directly and indirectly, in the conduct of Anadarko's business affairs. Because of their senior positions, they knew the adverse non-public information about Anadarko's misstatement of income and expenses and false financial statements.

62. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Anadarko's financial condition and results of operations, and to correct promptly any public statements issued by Anadarko which had become materially false or misleading.

63. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

releases and public filings which Anadarko disseminated in the marketplace during the Class Period concerning Anadarko's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Anadarko to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Anadarko within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Anadarko securities.

64.     Each of the Individual Defendants, therefore, acted as a controlling person of Anadarko. By reason of their senior management positions and/or being directors of Anadarko, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Anadarko to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Anadarko and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

65.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Anadarko.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 3, 2017

Respectfully submitted,

/s/ Willie C. Briscoe
Willie C. Briscoe
Texas Bar No.: 24001788
Southern District No.: 25157
The Briscoe Law Firm, PLLC
3131 McKinney Avenue, Suite 600
Dallas, Texas 75204
214-643-6011
281-254-7789 (Facsimile)
wbriscoe@thebriscoelawfirm.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
         ahood@pomlaw.com
         hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email: peretz@bgandg.com

*Attorneys for Plaintiff*