# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT EDGAR, Individually and On Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 4:17-CV-1372 |
| ANADARKO PETROLEUM CORPORATION, R. A. WALKER, and ROBERT G. GWIN, | § § § § | |
| Defendants. | § § | |

## DEFENDANTS' MOTION TO DISMISS
## THE CORRECTED AMENDED CLASS ACTION COMPLAINT

*Of Counsel:*
Jay B. Kasner
(*Admitted Pro Hac Vice*)
Email: Jay.Kasner@Skadden.com
Susan L. Saltzstein
(*Admitted Pro Hac Vice*)
Email: Susan.Saltzstein@Skadden.com
Skadden, Arps, Slate,
    Meagher & Flom LLP
4 Times Square
New York, New York  10036-6518
Tel:  (212) 735-3000
Fax:  (212) 735-2000

Heather A. Lohman
Fed. Bar No. 28417
Texas Bar No. 24027008
Email: Heather.Lohman@Skadden.com
Skadden, Arps, Slate,
    Meagher & Flom LLP
1000 Louisiana Street, Suite 6800
Houston, Texas  77002
Tel:  (713) 655-5105
Fax:  (713) 483-9105

Noelle M. Reed
Fed. Bar No.: 27139
Texas Bar No.: 24044211
Email: Noelle.Reed@Skadden.com
Skadden, Arps, Slate,
    Meagher & Flom LLP
1000 Louisiana Street, Suite 6800
Houston, Texas 77002
Tel:  (713) 655-5122
Fax:  (713) 483-9122

*Attorney-in-Charge for Defendants
Anadarko Petroleum Corporation, R. A.
Walker, Robert G. Gwin, Robert K. Reeves,
and Darrell E. Hollek*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 1

NATURE AND STAGE OF THE PROCEEDINGS .................................................. 3

STATEMENT OF ISSUES ................................................................................. 3

FACTUAL BACKGROUND ............................................................................... 4

      A.    Parties ........................................................................................... 4

      B.    Anadarko acquired 1,500 Colorado wells from Noble in the Land Swap ..................................................................................................... 5

      C.    Two Colorado wells were involved in accidents in 2017. ........................ 5

      D.    Anadarko consistently disclosed its risks during the proposed class period. .................................................................................................. 6

      E.    Plaintiff's claims are premised on non-actionable and immaterial statements .............................................................................................. 7

SUMMARY OF THE ARGUMENT ..................................................................... 7

ARGUMENT .................................................................................................... 9

  I.    Plaintiff fails to state a claim under Section 10(b) of the Exchange Act. ............... 9

      A.    Standard of Review ........................................................................... 9

      B.    None of the statements in the Amended Complaint can support a claim under the securities laws. ........................................................... 11

          1.    The challenged statements are not false and misleading. .............. 11

          2.    The challenged statements are non-actionable puffery ................. 16

          3.    At most, Plaintiff's allegations are non-actionable second-guessing of management decisions. ............................................. 17

      C.    Plaintiff fails to allege facts supporting a strong inference of Anadarko's fraudulent intent or severe recklessness. ............................. 18

          1.    The majority of the challenged statements are not attributed to any specific Anadarko executive. ............................................. 19

i

2.      Plaintiff fails to allege that the few attributed statements were made with the required state of mind. ...................................20

3.      Plaintiff fails to allege that Anadarko executives acted with any improper motive. ...................................................24

II.     Because Plaintiff's Section 10(b) claim fails, its secondary Section 20(a) claims fail as well. ....................................................................................25

CONCLUSION ................................................................................................................25

## **TABLE OF AUTHORITIES**

### CASES

*ABC Arbitrage Plaintiffs Group v. Tchuruk,*
  291 F.3d 336 (5th Cir. 2002) ...................................................................16, 23

*Abrams v. Baker Hughes Inc.,*
  292 F.3d 424 (5th Cir. 2002) ......................................................17, 19, 20, 22

*Albert Fadem Trust v. Citigroup Inc.,*
  165 F. App'x 928 (2d Cir. 2006) .....................................................................18

*In re Anadarko Petroleum Corp. Class Action Litigation,*
  957 F. Supp. 2d 806 (S.D. Tex. 2013) ........................................................ 17-18

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..........................................................................................10

*In re Azurix Corp. Securities Litigation,*
  198 F. Supp. 2d 862 (S.D. Tex. 2002), *aff'd sub nom. Rosenzweig v. Azurix Corp.,*
  332 F.3d 354 (5th Cir. 2003) .............................................................................8

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)............................................................................................9

*In re BP p.l.c. Securities Litigation ("BP I"),*
  843 F. Supp. 2d 712 (S.D. Tex. 2012) ..............................................................2

*In re BP p.l.c. Securities Litigation ("BP II"),*
  852 F. Supp. 2d 767 (S.D. Tex. 2012) .................................................. *passim*

*In re Browning-Ferris Industries Inc. Securities Litigation,*
  876 F. Supp. 870 (S.D. Tex. 1995) .................................................................18

*In re Capstead Mortgage Corp. Securities Litigation,*
  258 F. Supp. 2d 533 (N.D. Tex. 2003) ...........................................................19

*In re Citigroup, Inc. Securities Litigation,*
  330 F. Supp. 2d 367 (S.D.N.Y. 2004)..............................................................18

*City of Pontiac Policemen's & Firemen's Retirement System v. UBS AG,*
  752 F.3d 173 (2d Cir. 2014)..............................................................................16

*Financial Acquisition Partners LP v. Blackwell,*
  440 F.3d 278 (5th Cir. 2006) ......................................................................8, 11

*Foley v. Transocean Ltd.,*
  861 F. Supp. 2d 197 (S.D.N.Y. 2012)...............................................................1

iii

*In re Franklin Bank Corp. Securities Litigation*,
     782 F. Supp. 2d 364 (S.D. Tex. 2011) ..................................................................... 24-25

*Higginbotham v. Baxter International, Inc.*,
     495 F.3d 753 (7th Cir. 2007) ................................................................................... 11

*Indiana Electrical Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*,
     537 F.3d 527 (5th Cir. 2008) ........................................................................... *passim*

*Kapps v. Torch Offshore, Inc.*,
     379 F.3d 207 (5th Cir. 2004) ................................................................................... 16

*Lain v. Evans*,
     123 F. Supp. 2d 344 (N.D. Tex. 2000) ..................................................................... 9

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
     135 S. Ct. 1318 (2015) .................................................................................. 3, 13-14

*Owens v. Jastrow*,
     789 F.3d 529 (5th Cir. 2015) ............................................................................. 16, 21

*In re Plains All American Pipeline, L.P. Securities Litigation*,
     245 F. Supp. 3d 870 (S.D. Tex. 2017) ............................................................. *passim*

*R2 Investments LDC v. Phillips*,
     401 F.3d 638 (5th Cir. 2005) ................................................................................... 24

*Rosenzweig v. Azurix Corp.*,
     332 F.3d 854 (5th Cir. 2003) .............................................................................. 8, 17

*Santa Fe Industries, Inc. v. Green*,
     430 U.S. 462 (1977) ..................................................................................... 3, 9, 17

*In re Securities Litigation BMC Software, Inc.*,
     183 F. Supp. 2d 860 (S.D. Tex. 2001) .............................................................. 4, 16-17

*Southland Securities Corp. v. INSpire Insurance Solutions Inc.*,
     365 F.3d 353 (5th Cir. 2004) ........................................................................... *passim*

*Taubenfeld v. Hotels.com*,
     385 F. Supp. 2d 587 (N.D. Tex. 2004) ..................................................................... 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
     551 U.S. 308 (2007) ........................................................................................... 8, 22

*Tuchman v. DSC Communications Corp.*,
     14 F.3d 1061 (5th Cir. 1994) .................................................................................... 9

# RULE

Fed. R. Civ. P. 12(b)(6)...................................................................................................9

Defendants Anadarko Petroleum Corporation ("Anadarko" or the "Company"), R. A. Walker, Robert G. Gwin, Robert K. Reeves, and Darrell E. Hollek (the "Individual Defendants") respectfully move to dismiss the Corrected Amended Class Action Complaint ("Amended Complaint" or "AC").

## PRELIMINARY STATEMENT

Plaintiff's claims are based on a logical fallacy.  Plaintiff posits that Anadarko's past, generic statements about its compliance efforts and safety protocols must have been false and misleading simply because those efforts failed to prevent the April 2017 Firestone accident. However, courts have routinely rejected this type of "attempt[] to conflate" tort claims with securities fraud claims because the two "are wholly separate."  *Foley v. Transocean Ltd.*, 861 F. Supp. 2d 197, 220 (S.D.N.Y. 2012) (dismissing securities claims arising out of the Macondo Prospect explosion).  *See also In re BP p.l.c. Sec. Litig. ("BP II")*, 852 F. Supp. 2d 767, 772-78, 820 (S.D. Tex. 2012) (same); *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 909 (S.D. Tex. 2017) (Rosenthal, J.) (dismissing securities claims associated with an oil spill in California).  This Court in *Plains* specifically rejected this same theory, holding that a company's high-level, general statements regarding compliance were not rendered false and misleading by a subsequent accident.  245 F. Supp. 3d at 909.

Moreover, Anadarko's general safety and compliance disclosures specifically warned investors of safety and compliance risks, including the risks of spills, accidents, explosions, and regulatory violations.  Unable to find a material misstatement or omission within Anadarko's robust disclosures, Plaintiff ignores these risk disclosures, focusing instead on broad, general statements of Anadarko's corporate aspirations and goals, such as that Anadarko employees "work to ensure that all of our activities are conducted to meet or exceed applicable laws, regulations and international standards" (AC ¶ 153), that teams "strive for ZERO incidents" (AC

1

¶ 158), and that Anadarko "believe[s] spills can be prevented by designing and operating equipment and training staff to avoid releases" (AC ¶ 158).  These are precisely the type of generic statements that courts within this circuit find are non-actionable because a reasonable investor would not rely on them in making a business decision.  *Plains*, 245 F. Supp. 3d at 900 (holding non-actionable statements such as "Plains . . . is committed to public safety, protection of the environment and operation of our facilities in a prudent and safe manner" (citation omitted)).  *See also In re BP p.l.c. Sec. Litig. ("BP I")*, 843 F. Supp. 2d 712, 757 (S.D. Tex. 2012) ("[G]eneralized statements about BP's 'commitment to safety,' prioritization of 'process safety performance,' headway in making 'real progress' in the process safety arena, and desire to become a 'world leader in process safety'" are "too squishy, too untethered to anything measurable, to communicate anything that a reasonable person would deem to be important to a securities investment decision.").[1]

Finally, even if Plaintiff could rely on generalized compliance disclosures to state a claim, the Amended Complaint fails in most cases to attribute the challenged statements to any Anadarko executive, and in the few cases where it attempts to do so, fails to plead facts establishing knowledge or scienter, as required for a Section 10(b) claim.  For these reasons and those set forth below, Plaintiff has failed to state a claim, and the Amended Complaint should be dismissed with prejudice.

---

[1]   The Court in *BP I* dismissed the claims based on BP's "squishy," "generalized" safety statements, the exact type of statements at issue here.  843 F. Supp. 2d at 757.  The Court, however, allowed certain claims arising from markedly different types of statements to proceed.  *Id.* at 759, 763, 773 (finding that plaintiffs had sufficiently pled falsity as to defendants' statements that:  (1) they had taken measurable safety actions that were recommended in a written report, when the company's records suggested otherwise; (2) the Deepwater Horizon rig had an excellent safety record, when it had failed recent tests; and (3) the company could recover 500,000 barrels of oil per day, when in fact it could recover only 15,000).

## NATURE AND STAGE OF THE PROCEEDINGS

This action was filed on May 3, 2017.  (Dkt. 1.)  On July 24, 2017, the Court appointed Iron Workers Benefit and Pension Fund – Iron Workers District Counsel Philadelphia & Vicinity ("Plaintiff") as lead plaintiff.  (Dkt. 23.)  On October 13, 2017, pursuant to an agreed scheduling order, Plaintiff filed an amended complaint (Dkt. 33), which it corrected on November 2, 2017 (Dkt. 35).

## STATEMENT OF ISSUES

1.  Whether Section 10(b) claims should be dismissed for failure to plead actionable misstatements or omissions where they rely on "generalized, positive statements" that are too "vague" to contain any "concrete factual or material misrepresentations."  *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 372 (5th Cir. 2004) (citation omitted).

2.  Whether Section 10(b) claims should be dismissed for failure to plead actionable misstatements or omissions where they fail to allege a basis to assert that challenged statements of belief were not honestly held.  *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1328 (2015).

3.  Whether Section 10(b) claims that essentially allege that a company mismanaged its operations should be dismissed under controlling case law that "internal corporate mismanagement" does not give rise to a Section 10(b) claim. *See, e.g.*, *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977).

4.  Whether Section 10(b) claims that rely on group pleading without any allegations about specific individuals' knowledge or reckless disregard of the falsity of any statement should be dismissed under settled law for failure to plead specific facts establishing a strong inference of scienter.  *See, e.g.*, *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir. 2008); *Southland*, 365 F.3d at 370-71.

5.  Whether Section 20(a) claims should be dismissed where all Section 10(b) claims fail, because control person liability is secondary only.  *Southland*, 365 F.3d at 383-84.

# FACTUAL BACKGROUND[2]

### A.    Parties

Plaintiff is a pension fund that administers benefits for members in the Philadelphia area, and a purported Anadarko shareholder.  (AC ¶ 26.)  Plaintiff seeks to represent "persons or entities who purchased or otherwise acquired the Anadarko securities traded on the NYSE" during the proposed class period, February 8, 2016, to May 2, 2017.  (AC ¶¶ 1, 160.)  According to its certification, Plaintiff purchased Anadarko stock on the following dates:  September 21, 2016; October 20, 2016; October 21, 2016; December 7, 2016; and April 21, 2017.  Plaintiff sold some of its shares on April 24, 2017.  (Dkt. 13-2, at 2-3.)

Defendant Anadarko is among the world's largest independent oil and natural gas exploration and production companies and operates domestically in the Rocky Mountains, the southern United States, the Appalachian basin, and Alaska.  (*See* Declaration of Noelle M. Reed in Support of Defendant's Motion to Dismiss ("Reed Decl.") Ex. 1, 2015 10-K, 2.)[3]  Anadarko is also among the largest oil and gas producers in the deepwater Gulf of Mexico and has worldwide exploration and production activities in Algeria, Ghana, Mozambique, Colombia, Kenya, and other countries.  (*Id.*)

The Individual Defendants are Anadarko officers and directors.  R. A. Walker is Anadarko's Chairman, President, and Chief Executive Officer; Robert G. Gwin is Executive Vice President, Finance and Chief Financial Officer; Robert K. Reeves is Executive Vice President, Law and Chief Administrative Officer; and Darrell E. Hollek is currently a Senior

---

[2]    The facts alleged in the Amended Complaint are assumed to be true for purposes of this motion to dismiss only.

[3]    The Court may consider documents "integral to and explicitly relied on in the complaint," that are appended to this motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the Amended Complaint.  *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 882 (S.D. Tex. 2001).

Advisor and was previously Executive Vice President, U.S. Onshore Exploration & Production from April 28, 2015, to August 22, 2016, and then Executive Vice President, Operations from August 23, 2016, through May 10, 2017.

**B.    Anadarko acquired 1,500 Colorado wells from Noble in the Land Swap.**

In 2013, Anadarko and Noble Energy, Inc. exchanged ownership of approximately 100,000 acres of land in the Wattenberg field in Colorado (the "Land Swap").  (AC ¶ 77.)  In the Land Swap, Anadarko acquired 1,500 wells and the accompanying land from Noble.  (AC ¶ 7.)  Plaintiff alleges that because some of these wells needed repairs, Anadarko approved a budget and remediation plan.  (AC ¶ 90.)  Near the end of 2014, the price of oil collapsed, allegedly forcing Anadarko to cut expenditures and later its workforce.  (AC ¶¶ 91, 95.)  Plaintiff alleges through an unnamed former employee that, thereafter, Anadarko focused its remediation efforts on high-producing or high-risk wells.  (AC ¶¶ 105, 106, 109.)

Less than 30% of Anadarko's sales volume in fiscal year 2015 was attributable to the Wattenberg field.  (Reed Decl. Ex. 1, 2015 10-K, 17.)  During the proposed class period, Anadarko conducted extensive domestic and international oil and gas exploration and production activities in the continental U.S., Alaska, the Gulf of Mexico, and in such countries as Algeria, Ghana, Mozambique, Colombia, Côte d'Ivoire, and others.  (Reed Decl. Ex. 2, 2016 10-K, 4.)

**C.    Two Colorado wells were involved in accidents in 2017.**

On January 20, 2017, a well located in Weld County, Colorado, released 28,000 barrels of oil (the "Release").[4]  (AC ¶ 102.)  Separately, on April 17, 2017, a house located approximately 200 feet away from a well acquired in the Land Swap exploded, killing two people and injuring two more (the "Firestone Accident").  (AC ¶ 126.)  On April 26, 2017,

---

[4]    The well involved in the Release was not acquired in the Land Swap.

Anadarko announced that it owned the well located near the explosion and that, in an abundance of caution, it was shutting down 3,000 vertical wells in Colorado of the same vintage.  (AC ¶ 127.)

### D.      Anadarko consistently disclosed its risks during the proposed class period.

Throughout the class period, Anadarko made clear that it was subject to operating risks common to many oil and gas operators.   On February 17, 2017—two months before the Firestone Accident—it explicitly warned its investors of the risk of explosions.  (Reed Decl. Ex. 2, 2016 10-K, 45 ("Drilling operations may be curtailed, delayed, or canceled as a result of a variety of factors, including . . . explosions.").)   Notably, Plaintiff does not allege that any statement in the 2016 10-K issued during the proposed class period was false and misleading.

Anadarko also repeatedly disclosed specific risks related to its operations and regulatory compliance, including that:

- The Company has incurred and will continue to incur operating and capital expenditures, some of which may be material, to comply with environmental and occupational health and safety laws and regulations.  (Reed Decl. Ex. 1, 2015 10-K, 25; Reed Decl. Ex. 2, 2016 10-K, 27.)

- Failure to comply with these laws and regulations may result in the assessment of sanctions, including administrative, civil, and criminal penalties; the imposition of investigatory, remedial, and corrective action obligations or the incurrence of capital expenditures; the occurrence of delays in the permitting, development or expansion of projects . . . .  (Reed Decl. Ex. 1, 2015 10-K, 24; Reed Decl. Ex. 2, 2016 10-K, 26.)

- Our business is subject to all of the operating risks normally associated with the exploration for and production, gathering, processing, and transportation of oil and natural gas, including blowouts; cratering and fire; environmental hazards such as natural-gas leaks, oil spills, pipeline and vessel ruptures, and releases of chemicals or other hazardous substances, any of which could result in damage to, or destruction of, oil and natural-gas wells or formations, production facilities, and other property; pollution or other environmental damage; and injury to persons.  (Reed Decl. Ex. 1, 2015 10-K, 42; Reed Decl. Ex. 2, 2016 10-K, 43.)

**E.     Plaintiff's claims are premised on non-actionable and immaterial statements.**

Plaintiff claims that a number of statements in Anadarko's 2015 10-K and a smattering of Anadarko promotional materials were false and misleading.  All but one of the challenged statements are general statements regarding Anadarko's global commitment to compliance with health, safety, and environmental requirements.  (AC ¶¶ 140-59.)  The other, which is from a promotional document highlighting Anadarko's Wattenberg Integrated Operations Center ("IOC"), concerns monitoring and management capabilities for some of the wells and pipelines in the Wattenberg field.  (AC ¶¶ 146-47.)  Not one challenged statement references the specific regulations that Anadarko was subject to in Colorado, nor do any of the statements pertain to the type of well that allegedly caused the Firestone Accident.

## SUMMARY OF THE ARGUMENT

Plaintiff fails to identify a single actionable misstatement or omission concerning the Land Swap assets.  *See Southland*, 365 F.3d at 366 ("[L]iability under Rule 10(b)(5) requires . . . that the party make a statement which contains an untrue statement of material fact or omits a material fact necessary in order to make the statement not misleading . . . .").  Instead, Plaintiff apparently combed through Anadarko's financial statements, website, and marketing materials searching for <u>any</u> statement concerning safety and compliance and was able to identify only generic, non-actionable remarks like "our HSE [Health, Safety, and Environment] team works seamlessly with operations and facilities to ensure compliance with all applicable laws and regulations," and "[t]he teams strive for ZERO incidents."  (AC ¶¶ 140, 158.)  Plaintiff mounts no real challenge to the veracity of these remarks, which are no more than aspirational

statements, the type of corporate optimism[5] that courts, including this Court, routinely hold cannot support a fraud claim.  *See, e.g.*, *In re Azurix Corp. Sec. Litig.*, 198 F. Supp. 2d 862, 881-82 (S.D. Tex. 2002), *aff'd sub nom. Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003); *Plains*, 245 F. Supp. 3d at 901 (holding that statement that defendant "want[s] to make sure [it] follow[s] all the laws for environmental health and safety rules and regulation[s]" is not actionable).

Nor does Plaintiff allege facts constituting strong circumstantial evidence of the scienter required to support its claims.  *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006).  Plaintiff tries to impute scienter to Anadarko by alleging that the Individual Defendants collectively knew of the allegedly false statements simply by virtue of their positions at Anadarko.  (AC ¶ 172.)  But group pleading is insufficient to state a securities claim as a matter of law.  *BP II*, 852 F. Supp. 2d at 814 ("[T]he Fifth Circuit has rejected the group pleading approach.").  Rather, Plaintiff must allege that the individual corporate official who made the statement (or to whom it may be attributed) acted with fraudulent intent or severe recklessness.  *See Southland*, 365 F.3d at 366.  Plaintiff fails to meet this test for two reasons: (1) as to almost all of the challenged statements, Plaintiff fails even to plead facts that would attribute them to any Anadarko official; and (2) as to the few attributed statements, Plaintiff does not allege particularized facts that suggest a strong inference of scienter that is cogent and at least as compelling as any opposing inference of non-fraudulent intent.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

---

[5]    Courts sometimes refer to these statements as "puffery" or corporate "cheerleading" because they are meant to describe corporate aims generally as opposed to specific practices.  *See, e.g.*, *BP II*, 852 F. Supp. 2d at 789.

Plaintiff's securities fraud claim amounts to no more than an unsupported complaint of corporate mismanagement.  The Amended Complaint alleges that Anadarko purportedly "callously disregarded the safety of the Colorado communities in which it did business" by "la[ying] off 20-30% of its workforce" and "slash[ing] the remediation budget" "[a]fter oil prices collapsed."  (AC ¶¶ 9, 11, 21.)  But even if Plaintiff's after-the-fact critiques of Anadarko's business decisions were grounded in actual facts, they are at most claims of mismanagement that are not actionable under the securities laws.  *See Santa Fe*, 430 U.S. at 479; *Shaw*, 537 F.3d at 535.  Though Plaintiff may disagree with the wisdom of Anadarko's remediation priorities and personnel decisions, disagreement with Anadarko's business decisions does not amount to fraud. *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1070 (5th Cir. 1994) ("[C]orporate mismanagement does not, standing alone, give rise to a 10b-5 claim . . . ."); *Lain v. Evans*, 123 F. Supp. 2d 344, 349 (N.D. Tex. 2000) ("Although it is clear that Plaintiff disagrees with Defendants' strategic business decision . . . Plaintiff fails to explain how the statements regarding those business decisions were materially misleading.").

Finally, because Plaintiff fails to state a claim under Section 10(b), its claim under Section 20(a) fails as well, as Section 20(a) liability is secondary only.  Therefore, the Amended Complaint should be dismissed with prejudice.

## ARGUMENT

## I.  Plaintiff fails to state a claim under Section 10(b) of the Exchange Act.

### A.  Standard of Review

The Amended Complaint must be dismissed if it fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Those facts must amount to "more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To state a claim under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, a plaintiff must allege:  "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *BP II*, 852 F. Supp. 2d at 787-88.

"A plaintiff who asserts securities fraud in violation of § 10(b) and Rule 10b-5 must comply with the pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ['PSLRA']." *Plains*, 245 F. Supp. 3d at 889.  Rule 9(b) requires a plaintiff to state with particularity the circumstances constituting the fraud, and "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Id.* (citation omitted).  "In order to meet these additional requirements of the PSLRA, a plaintiff must, therefore:  (1) specify each statement alleged to have been misleading; (2) identify the speaker; (3) state when and where the statement was made; (4) plead with particularity the contents of the false representation; (5) plead with particularity what the person making the misrepresentation obtained thereby; and (6) explain the reason or reasons why the statement is misleading, *i.e.*, why the statement is fraudulent." *BP II*, 852 F. Supp. 2d at 788.  For each statement alleged to be false and misleading, the plaintiff must explicitly and precisely set out how the statement was false and misleading and how the speaker knew (or recklessly disregarded) that fact.  *See Plains*, 245 F. Supp. 3d at 890.

**B.      None of the statements in the Amended Complaint can support a claim under the securities laws.**

**1.      The challenged statements are not false and misleading.**

The gravamen of Plaintiff's Amended Complaint is that because the Release and Firestone Accident happened, Anadarko's general statements about safety must be false.  But Plaintiff's claim is legally insufficient.  Plaintiff has not pled with specificity why or how <u>any</u> of the purported misstatements were materially false and misleading.  *See Blackwell*, 440 F.3d at 287 (Plaintiffs must "specify each allegedly misleading statement and the reason why it is misleading.").  Plaintiff has not alleged that Anadarko made any statements specific to its regulatory compliance or the safety of the wells acquired in the Land Swap.

Moreover, Plaintiff's allegations of falsity are based substantially on statements by unnamed witnesses.   The Fifth Circuit requires that courts "discount allegations from confidential sources" because "[s]uch sources afford no basis for drawing plausible competing inferences."  *Shaw*, 537 F.3d at 535.  *See also Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007) ("It is hard to see how information from anonymous sources could be deemed 'compelling' or how we could take account of plausible opposing inferences.  Perhaps these confidential sources have axes to grind.  Perhaps they are lying.  Perhaps they don't even exist.").  In this case, reliance on the statements of unnamed witnesses would be particularly misplaced.  Plaintiff represented that it would disclose the witnesses' names upon request.  (AC at 7 n.2.)  However, Plaintiff has refused to do so despite numerous requests by Defendants, absent the signing of a stipulation that anticipated holding the names "attorneys' eyes only," a requirement inconsistent with Plaintiff's representation in the Amended Complaint that confidentiality is not required.

### *Statements regarding Anadarko's high-level regulatory and legal compliance*

Plaintiff contends that the following statements are false and misleading: that Anadarko's Health, Safety, and Environment ("HSE") team "works seamlessly with operations and facilities to ensure compliance with all applicable laws and regulations;" that Anadarko "believes that it is in material compliance with existing environmental and occupational health and safety regulations;" that Anadarko "work[s] to ensure that all of [its] activities are conducted to meet or exceed applicable laws, regulations and international standards;" and that "Anadarko operates its global onshore and offshore operations in compliance with the applicable laws and associated regulations."  (AC ¶¶ 140, 144, 149, 153, 157.)  Plaintiff apparently asks the Court to interpret Anadarko's general statements as a guarantee of perfect compliance and zero incidents, but a reasonable investor would not view those high-level statements as guarantees.  *See Plains*, 245 F. Supp. 3d at 909.  Anadarko's fulsome disclosures about potential compliance, environmental, and safety risks, including risks of spills and explosions, further negate any claim that the general statements that Plaintiff challenges were false and misleading.  (*See, e.g.*, Reed Decl. Ex. 1, 2015 10-K, 24, 25, 42; Reed Decl. Ex. 2, 2016 10-K, 26, 27, 43, 45.)

This Court recently addressed a nearly identical claim in *Plains* and held that "a reasonable investor would not understand [a] company's high-level, general statements that it was operating in substantial compliance with regulatory requirements as implicitly assuring absolute compliance . . . ."  245 F. Supp. 3d at 909.  "Instead, reasonable investors would understand that, for a very large pipeline company in this heavily regulated industry, regulatory notices of recordkeeping violations on minor portions of the company's operation are commonplace and unremarkable."  *Id.* at 909-10.

In *Plains*, the plaintiffs claimed that, because an oil spill occurred in one of the defendant's pipelines, the defendant's prior statements about its environmental and safety compliance must have been false.  The challenged statements included:  that the defendant "believe[s] [its] pipelines are in substantial compliance with HLPSA" and other regulations; that the defendant believes that it was in "substantial compliance with applicable OPA requirements;" and that the defendant believes it is in "substantial compliance with [its] risk management program."  *Id.* at 903.  This Court found these statements non-actionable and recognized that overlapping hedges and qualifications, such as the potential for future spills or the possibility of penalties from regulators, would inform a reasonable investor that absolute compliance is not guaranteed.  *See id.* at 910.

The facts of *Plains* are indistinguishable from this case.  None of Anadarko's statements regarding high-level regulatory and legal compliance was specific to the Land Swap wells or the wells involved in the Release and Firestone Accident.  Instead, it is clear that the statements broadly describe Anadarko's substantial and far-reaching global operations and its general compliance goals.  Anadarko's extensive global operations require compliance with numerous different health, safety, and environmental laws and regulations.  (*See supra* Factual Background, Part B.)  Even if Plaintiff could establish that a small number of wells and facilities in Colorado were mismanaged, that would not render false and misleading Anadarko's broad generalizations and aspirational statements about its global compliance efforts.

Moreover, Anadarko's statement that it "<u>believes</u> it is in material compliance with existing environmental and occupational health and safety regulations" is a statement of opinion, which is not actionable unless Plaintiff alleges facts showing that the speaker did not actually hold the stated beliefs.  *See Omnicare*, 135 S. Ct. at 1328 ("[A] statement of opinion is not

misleading just because external facts show the opinion to be incorrect."). Plaintiff comes nowhere close to satisfying the Supreme Court's stringent standard. The Amended Complaint is bereft of any well-pled allegations that Anadarko was in fact not in material compliance, much less that it did not believe it was in material compliance. Plaintiff's conclusory allegations of violations of Colorado rules and regulations are also insufficient. Plaintiff has not alleged that any authorities found Anadarko non-compliant at the time the statements were made. *Cf. Plains*, 245 F. Supp. 3d at 909 (finding that receipt of notices of recordkeeping violations was insufficient to render false general statements of compliance).[6] And Plaintiff has not alleged anything that would suggest that Anadarko did not believe its statements about regulatory compliance.

Anadarko also specifically disclosed to investors that it faced operating risks that included the possibility of substantial and material fines for failure to conform to regulatory requirements and operating risks associated with oil and gas production, including blowouts, cratering and fire, leaks, spills, pipeline ruptures, and releases of chemicals and hazardous substances, all of which can damage or destroy property or injure people. (Reed Decl. Ex. 1, 2015 10-K, 33, 42.) Anadarko further noted that it was subject to rules and regulations "too numerous to list." (Reed Decl. Ex. 3, 2015 Safety Overview, 6.) These qualifications cannot be reconciled with Plaintiff's implicit premise that general assurances of compliance should be interpreted to preclude the possibility of noncompliance. *See Plains*, 245 F. Supp. 3d at 910.

---

6     Any notice Anadarko may have received after the fact would not render the statements false and misleading at the time they were made. *See, e.g.*, *In re Plains All American Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 909 n.7 (S.D. Tex. 2017) (Rosenthal, J.) (holding that a company had no reason to believe it was not in material compliance with the law until the company was aware that the regulator took a different position as to the company's compliance, and therefore the earlier statement that the company was in compliance was not false and misleading).

### *Statements regarding the Wattenberg IOC*

Plaintiff also contends that statements in the Wattenberg Integrated Operations Center Factsheet ("IOC Factsheet") are false and misleading.  Specifically, Plaintiff points to Anadarko's representations about the IOC's monitoring and management of Wattenberg field assets, including that the Center "[p]rovides real-time remote-monitoring capabilities for 6,800+ wells and 3,700+ tank facilities," and that it "[a]pplies state of the art oil, natural gas, and water management to Anadarko tank batteries, facilities and pipeline infrastructure."  (AC ¶ 146.) Plaintiff also challenges Anadarko's statement that the IOC "[i]mmediately pinpoints issues associated with field alerts and alarms."  (AC ¶ 146.)

Plaintiff alleges these statements were false and misleading because (1) "a large proportion of Anadarko's facilities and pipeline infrastructure was not state of the art, but old and decaying; and [(2)] the [IOC] could not pinpoint issues or provide real-time monitoring consistently because Anadarko did not know where many of its lines in Colorado were located." (AC ¶ 147.)  The challenged statements clearly describe the IOC's <u>management</u> as state of the art, but Plaintiff oddly contends they are misleading because Anadarko's <u>facilities and infrastructure</u> were not state of the art.[7]  Plaintiff cannot manufacture a claim by changing the subject of Anadarko's statements from its management to its infrastructure.  Nor did Anadarko represent that it is capable of pinpointing all issues in all wells, lines, or facilities.  Instead, it stated that it "pinpoints issues associated with field alerts and alarms."  Plaintiff does not allege a link between this statement and the Firestone Accident or the Release.  Plaintiff's allegations of falsity simply do not align with the language of the statements.

---

[7]    As discussed below, statements regarding state-of-the-art management are also non-actionable puffery.  *See Southland*, 365 F.3d at 372.

***Statements concerning Anadarko's aspiration to prevent releases***

Finally, Anadarko stated in a general safety overview that its "teams strive for ZERO incidents" and that "spills can be prevented" through training and technology.  (AC ¶¶ 150, 158.) Plaintiff alleges, based in part on unnamed witness allegations, that these statements were false because Anadarko did not have enough skilled employees.  (*See, e.g.*, AC ¶¶ 98-100, 151.)  But Plaintiff's allegation, even if accepted as true, does not render the statements materially false and misleading.  That Anadarko purportedly hired too few skilled employees cannot establish that Anadarko's teams did not "strive for zero incidents."  Again, Plaintiff purports to use the Release as "proof" that Anadarko's teams did not strive for zero spills:  because a release occurred, Anadarko must not have been truthful about its prevention efforts.  This allegation of fraud by hindsight is plainly insufficient to support a claim.  *See Owens v. Jastrow*, 789 F.3d 529, 544-45 (5th Cir. 2015) (quoting *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 187-88 (2d Cir. 2014)).

### 2.      The challenged statements are non-actionable puffery.

Questions of materiality are properly addressed at the motion to dismiss stage.  *See, e.g.*, *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 359 (5th Cir. 2002).  Materiality is determined based on a "'substantial likelihood' that a reasonable investor would consider . . . [the challenged] statements . . . to have 'significantly altered the "total mix" of information.'" *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 216 (5th Cir. 2004) (alterations in original) (citations omitted).  Information in the public domain and facts known or reasonably available to investors are considered part of that total mix of information.  *Id.*  Relevant qualifications render seemingly contradictory general statements immaterial.  *See In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 888-89 (S.D. Tex. 2001) (holding that defendant's disclosures of risk

factors and qualifying statements rendered a general statement immaterial, and dismissing the case with prejudice).

Statements lauding efforts at spill prevention and general compliance are the sort of nonspecific, aspirational statements that courts have held to be immaterial, non-actionable puffery.  *E.g.*, *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869-70 (5th Cir. 2003); *see also Taubenfeld v. Hotels.com*, 385 F. Supp. 2d 587, 592 (N.D. Tex. 2004) ("Statements worded as vague optimism, not phrased in terms of guarantees, are not actionable under federal securities laws because reasonable investors will not rely on them.") (citations omitted).  In *Plains*, this Court applied this principle to dismiss as puffery statements including words or phrases such as "commitment," "state-of-the-art," and "core value."  245 F. Supp. 3d at 901, 902.  Here, Anadarko's statements that its teams "<u>strive</u> for zero incidents" and that it believes spills "<u>can</u> be prevented" are the sort of corporate optimism this Court has correctly found non-actionable.  *See id.*  "No reasonable investor would consider such statements material, and . . . investors and analysts are too sophisticated to rely on vague expressions of optimism rather than specific facts."  *Id.* at 891 (quotation omitted).

### 3.    At most, Plaintiff's allegations are non-actionable second-guessing of management decisions.

Despite the Fifth Circuit's express admonition that "negligence, oversight or simple mismanagement" cannot "rise to the standard necessary to support a securities fraud action," *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 433 (5th Cir. 2002), the Amended Complaint amounts to nothing more than nitpicking Anadarko management decisions.  (AC ¶¶ 91-100, 105-13.)  Plaintiff essentially alleges that Anadarko responded improperly to the downturn in the oil market by incorrectly prioritizing resources.   Such allegations are not actionable under the federal securities laws.  *See, e.g.*, *Santa Fe*, 430 U.S. at 479; *Shaw*, 537 F.3d at 535; *In re*

*Anadarko Petroleum Corp. Class Action Litig.*, 957 F. Supp. 2d 806, 818 (S.D. Tex. 2013).  A plaintiff cannot transform allegations of corporate mismanagement into securities fraud merely by pleading that the alleged mismanagement rendered general statements about the corporation's business operations misleading.  *See In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 375 (S.D.N.Y. 2004) (holding that alleged inconsistency between Citigroup's general statements concerning its "risk management policies and historical business practices" and its specific risky transactions "amount[ed] to nothing more than a charge that Citigroup's business was mismanaged"), *aff'd sub nom. Albert Fadem Trust v. Citigroup Inc.*, 165 F. App'x 928 (2d Cir. 2006).

Plaintiff attempts to convert these criticisms into a case of fraud by hindsight, contending that the Firestone Accident "proves" that these business decisions impacted the Company's stated safety and compliance goals, but cannot muster any factual allegations supporting Plaintiff's cause-and-effect hypothesis.  "Second-guessing such judgments in the light of hindsight is simply not a basis for securities fraud."  *In re Browning-Ferris Indus. Inc. Sec. Litig.*, 876 F. Supp. 870, 901 (S.D. Tex. 1995).

### C.    Plaintiff fails to allege facts supporting a strong inference of Anadarko's fraudulent intent or severe recklessness.

As to each challenged statement, Plaintiff conclusorily asserts that "Anadarko knew" or "Anadarko intentionally violated" a rule or regulation.  (AC ¶¶ 141, 145, 151, 154, 159.) Blanket allegations that the company knew or was aware of a violation are simply not sufficient to plead scienter as to "the role of each [defendant] with respect to each act or omission in the alleged fraud."  *BP II*, 852 F. Supp. 2d at 814; *see also Plains*, 245 F. Supp. 3d at 921 (holding that allegations that "the company" knew are insufficient to plead scienter).  Plaintiff must allege

the state of mind of an individual who issued a statement on behalf of the corporation with intent to deceive, or at least with severe recklessness.  *See Southland*, 365 F.3d at 366.

"The individualized and specific allegations must generate a cogent and compelling inference that the defendant intended to deceive or was severely reckless.  An inference of scienter is cogent and compelling only if it is at least as persuasive as any other inference about the defendant's state of mind that could be drawn from the alleged facts."  *Plains*, 245 F. Supp. 3d at 921.  Allegations of motive and opportunity alone will not suffice.  *See Abrams*, 292 F.3d at 430.  Severe recklessness is present only in extreme circumstances that "involve not merely simple or even inexcusable negligence" but rather "an extreme departure from the standards of ordinary care."  *Shaw*, 537 F.3d at 533 (citation omitted).  Allegations that a defendant "should have known" are insufficient to allege severe recklessness.  *See In re Capstead Mortg. Corp. Sec. Litig.*, 258 F. Supp. 2d 533, 564 (N.D. Tex. 2003).

### 1. The majority of the challenged statements are not attributed to any specific Anadarko executive.

To impute liability to a corporate defendant under Section 10(b), the individual corporate officer making the statement must have had the requisite intent.  *See Southland*, 365 F.3d at 365-66.  Before pleading an individual's intent, however, Plaintiff must tie unattributed statements to a particular officer.  *See id.* at 364-65.  To do so, Plaintiff must plead a signature on the document or "particular factual allegations explaining the individual's involvement in the formulation of either the entire document, or that specific portion of the document, containing the statement."  *Id.* at 365.  The most Plaintiff can do is point to unnamed witness allegations suggesting that decisions were pushed up the chain of command and that non-defendant executives brushed off safety concerns.  (AC ¶¶ 76, 99, 101, 102, 104.)  Despite Plaintiff's attempt to paint a picture through unnamed witnesses of Anadarko purportedly ignoring safety

concerns and paying "lip service" to safety (AC ¶¶ 93-104), Plaintiff has provided no factual information from which this Court could determine that the Individual Defendants—or any particular Anadarko executives—were responsible for the majority of the challenged statements.[8]

Even if Plaintiff had alleged that specific Anadarko executives were somehow responsible for the unattributed statements, Plaintiff has failed to allege that any individual had knowledge of their alleged falsity.   Plaintiff must plead facts that give rise to a "cogent and compelling inference" that persons to whom statements are attributed intended to deceive or were severely reckless.   *Plains*, 245 F. Supp. at 921.   Instead, Plaintiff simply posits that the Individual Defendants, "by virtue of their positions at Anadarko," had actual knowledge and allegedly intended to deceive investors.   But "[a] pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company."   *Abrams*, 292 F.3d at 432.   For this same reason, Plaintiff's reliance on Craig Walters', John Christiansen's, and Bradley Holly's positions in Anadarko (AC ¶ 172) are also legally insufficient to impute awareness of the alleged misstatements to Anadarko.   *Abrams*, 292 F.3d at 432.

### 2.   Plaintiff fails to allege that the few attributed statements were made with the required state of mind.

Plaintiff attributes certain statements to Individual Defendants Gwin and Walker and non-party David McBride.   Gwin and Walker signed the 2015 10-K, and Walker and McBride signed both the 2015 and 2016 Safety Overviews.   But signing a document does not suggest scienter and is insufficient to meet Plaintiff's pleading burden.   *Plains*, 245 F. Supp. 3d at 923

---

[8]   The exceptions are the statements contained in the 2015 Safety Overview, the 2016 Safety Overview, and the 2015 10-K, each of which was signed by certain members of corporate management.   However, as will be discussed below, Plaintiff fails to plead scienter as to these statements.

("[T]he fact that an individual defendant made a statement or signed a document containing a statement shows only that the statement is attributable to that defendant, not that he or she had the legally required state of mind."); *Owens*, 789 F.3d at 545-46 (holding that signing a company's SEC filings did not lead to a strong inference of scienter).

### Walker and Gwin

Nowhere in the Amended Complaint is Walker or Gwin alleged to have knowledge of any safety or compliance issues in Colorado.  With no specific, individualized allegations of scienter, Plaintiff relies on the type of impermissible group pleading that the Fifth Circuit has squarely rejected.  *See BP II*, 852 F. Supp. 2d at 814.  Plaintiff alleges that "the Executive Committee Defendants, Walters, Christiansen, and Holly had actual knowledge of the materially false and misleading statements . . . and intended . . . to deceive Plaintiff and the other members of the Class . . . ."  (AC ¶ 172.)  And in Plaintiff's list of alleged misstatements and proffered reasons that the statements were false, Plaintiff pleads only that Anadarko knew of their falsity, with no reference to an individual.  (AC ¶¶ 141, 145, 151, 154, 159.)  But Plaintiff must "'distinguish among defendants and allege the role of each with respect to "each act or omission" in the alleged fraud.'"  *BP II*, 852 F. Supp. 2d at 814 (citation omitted).  Plaintiff's failure to plead scienter as to each individual defendant and statement is an independent ground for dismissal.  *Plains,* 245 F. Supp. 3d at 923.

Unable to plead any particularized facts that would give rise to a strong inference of any individual's fraudulent intent or severe recklessness, Plaintiff asks the Court to infer scienter because, according to an unnamed witness, "Anadarko's Executive Committee authorized a budget for remediation of the wells . . . it acquired in the Land Swap," and Walker and Gwin were members of the Executive Committee.  (AC ¶ 90.)  But the fact that a CEO and CFO

authorized a budget is a far cry from the requirement that plaintiffs must "allege in detail who provided the officers what information, and when." *Plains*, 245 F. Supp. 3d at 926.   Mere authorization of a remediation budget does not imply that Walker or Gwin were aware that Anadarko purportedly "intentionally violated" regulatory requirements or that the teams did not in fact seek to eliminate spills.   Rather, authorizing a remediation budget logically leads to the opposite inference:   Walker and Gwin authorized a budget in an effort to comply with requirements and prevent spills.   Plaintiff has failed to allege facts that support the slightest inference of scienter, much less met its burden of demonstrating a "cogent and compelling inference that the defendant[s] intended to deceive or w[ere] severely reckless." *Id.* at 921.   *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

Plaintiff also argues based on an unnamed witness statement that the Executive Committee received "status reports" on efforts to remediate the Noble wells.  (AC ¶ 94.)  A bare allegation that a group of executives received reports wholly fails to meet the requisite pleading standard:  A plaintiff must provide corroborating evidence of the reports' details, authors, and recipients.  *Abrams*, 292 F.3d at 432.  Here, Plaintiff has not alleged that the contents of any reports should have led Walker and Gwin to believe that Anadarko's teams did not "strive" for zero spills, or that Anadarko was not in compliance with any specific regulations.  Nor has Plaintiff identified the reports' authors or alleged that Walker and Gwin had actual knowledge of their contents or recklessly disregarded them.  Allegations based merely on the receipt of regular reports are insufficient to allege a cogent and compelling inference that defendants acted with scienter. *See BP II*, 852 F. Supp. 2d at 816 (collecting cases).

Plaintiff also claims that the Executive Committee was aware of alleged problems with the Noble wells, according to an unnamed witness.  (AC ¶ 85.)  That unnamed witness further

claims that safety decisions were "pushed up the chain of command."  (AC ¶ 76.)  Both claims are legally insufficient.  *Plains*, 245 F. Supp. 3d at 908 ("Pleading generally that information was available from someone in the company is not adequate.").  Plaintiff has failed to allege facts that would give rise to a strong inference that alleged safety decisions that were "pushed up the chain of command" resulted in Walker or Gwin having any relevant knowledge of the safety decisions.  Plaintiff's allegations fall far short of the requirement that the Amended Complaint plead what type of information which individuals received, when they received it, and who authored it.  *Id.*

For this same reason, Plaintiff's allegation based on information obtained from an unnamed witness that Anadarko maintained a spreadsheet ranking allegedly risky and problematic wells is insufficient.  (AC ¶ 86.)  Plaintiff has not alleged that any Individual Defendant or high-level executive whose state of mind could be imputed to Anadarko actually received, saw, or even was aware of the alleged spreadsheet.  Nor does the implication that certain risks were purportedly identified lend itself to an actionable claim under the securities laws.  *See ABC Arbitrage*, 291 F.3d at 356.

### McBride

Non-defendant McBride, who Plaintiff alleges signed the 2015 and 2016 Safety Overviews, is the only other individual to whom Plaintiff has attributed a statement.  But Plaintiff has not alleged that McBride had any knowledge that the statements in those documents regarding regulatory compliance and spill safety goals were materially false when they were made.  Plaintiff asserts only that Korby Bracken (who, according to an unnamed witness, allegedly was at meetings in which safety issues were discussed) "reports to" McBride.  (AC ¶¶ 44, 111, 113.)  This is insufficient as a matter of law.  *See Shaw*, 537 F.3d at 535 (holding that pleadings of scienter fail where plaintiffs rely merely on the defendant's position in the

company).  Plaintiff does not allege what information was provided at these meetings, nor does Plaintiff allege any link between Bracken's purported knowledge and McBride's.  In short, Plaintiff fails to identify any factual basis to impute scienter to McBride.

Plaintiff has therefore failed to adequately plead that the statements in the 2015 10-K, the 2015 Safety Overview, and the 2016 Safety Overview were made with scienter.  Claims arising from those statements should be dismissed.

### 3.  Plaintiff fails to allege that Anadarko executives acted with any improper motive.

When a plaintiff fails to adequately allege that the defendants had motive to commit fraud, "the strength of its circumstantial evidence of scienter must be correspondingly stronger." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 644 (5th Cir. 2005).  Here, Plaintiff has failed completely to plead motive to commit fraud.  There are no explicit references anywhere in the Amended Complaint to Anadarko or its executives' possible motives for making any alleged misstatements.  Plaintiff implies that someone in the Company may have been motivated by a desire to cut costs or keep Anadarko's stock price high.  (*See, e.g.*, AC ¶¶ 93, 152, 171.)  Plaintiff alleges that, according to unnamed witnesses, Anadarko was "stingy" on environmental issues (AC ¶ 93), laid off employees while increasing production (AC ¶¶ 95-98), prioritized remediation to support production (AC ¶¶ 105-110), and did not devote a "significant percentage of the capital allocation in a lower commodity price environment" to old-well remediation and repair (AC ¶ 92).

But Plaintiff's allegations that Anadarko sought to cut costs or keep its stock price high, even if they were articulated, would fail as a matter of law.  Cost cutting and striving for higher stock prices are not motives from which fraudulent intent can be inferred.  *See In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 377 (S.D. Tex. 2011) ("'Scienter in a particular case

may not be footed solely on motives universal to corporate executives,' such as the desire to maintain the company's credit ratings or maintain high stock prices to increase its value." (quoting *Shaw*, 537 F.3d at 544)).

**II.     Because Plaintiff's Section 10(b) claim fails, its secondary Section 20(a) claims fail as well.**

The Amended Complaint does not allege facts sufficient to support a primary violation of Section 10(b) of the Exchange Act.   Absent a primary violation of Section 10(b), Plaintiff's secondary claims under Section 20(a) against the Individual Defendants must fail as well.   *See Shaw*, 537 F.3d at 545; *Plains*, 245 F. Supp. 3d at 893.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

DATED: December 8, 2017

Respectfully submitted,

*/s/ Noelle M. Reed*
Noelle M. Reed
Fed. Bar No. 27139
Texas Bar No. 24044211
Email: Noelle.Reed@Skadden.com
Skadden, Arps, Slate,
    Meagher & Flom LLP
1000 Louisiana Street, Suite 6800
Houston, Texas  77002
Tel:  (713) 655-5122
Fax:  (713) 483-9122

*Attorney-in-Charge for Defendants*
*Anadarko Petroleum Corporation, R. A.*
*Walker, Robert G. Gwin, Robert K. Reeves,*
*and Darrell E. Hollek*

*Of Counsel:*
Jay B. Kasner
(*Admitted Pro Hac Vice*)
Email: Jay.Kasner@Skadden.com
Susan L. Saltzstein
(*Admitted Pro Hac Vice*)
Email: Susan.Saltzstein@Skadden.com
Skadden, Arps, Slate,
    Meagher & Flom LLP
4 Times Square
New York, New York  10036-6518
Tel:  (212) 735-3000
Fax:  (917) 735-2000

Heather A. Lohman
Fed. Bar No. 28417
Texas Bar No. 24027008
Email: Heather.Lohman@Skadden.com
Skadden, Arps, Slate,
    Meagher & Flom LLP
1000 Louisiana Street, Suite 6800
Houston, Texas  77002
Tel:  (713) 655-5105
Fax:  (713) 483-9105

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 8, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the counsel who have registered with this Court.

*/s/ Noelle M. Reed*
Noelle M. Reed
